UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GENTRY DILLWORTH, et al., | ) | CASE NO. 5:08CV1694 |
| | ) | |
| Plaintiffs, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| CASE FARMS PROCESSING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This Memorandum Opinion and Order arises out of the motion of Defendant Case Farms Processing, Inc. ("Case Farms") to dismiss and/or strike the North Carolina state law claims and the Rule 23 class action claims. (Doc. No. 37.) Plaintiffs have filed an opposition (Doc. No. 61), and Case Farms has filed a reply (Doc. No. 65). Pursuant to an order of this Court, the parties have also filed supplemental briefs on certain issues raised in Case Farms's reply. (Minutes of Proceedings, 8/07/2009; Doc. Nos. 67, 70.) For the reasons that follow, Case Farms's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL AND PROCEDURAL HISTORY

Case Farms is a poultry processing company that operates plants in Winesburg, Ohio and Goldsboro and Morgantown, North Carolina. Plaintiff Gentry Dillworth ("Dillworth") worked as a poultry processor in one of Case Farms's Ohio plants, and Plaintiff Anthony Smith ("Smith") worked as a poultry processor in one of Case Farms's North Carolina plants. On July 15, 2008, Dillworth and Smith brought a collective action under the Fair Labor Standards Act (FLSA), alleging that Case Farms failed to pay them for time spent donning and doffing their uniforms. A large number of other employees in Case Farms's Ohio and North Carolina plants joined in the collective action. (Doc. Nos. 3-7, 8-9, 20-23, 25, 28-29, 34-36.)

On November 24, 2008, Plaintiffs filed an amended complaint. (Doc. No. 33.) The amended complaint alleges that, in addition to donning and doffing time, Case Farms also failed to pay Plaintiffs for "post-donning walk time" (walking from the changing room to the processing floor before being clocked in); "waiting time" (waiting for the first chicken to be available to process); and "pre-doffing walk time" (walking to the changing room after being clocked out). In addition to the FLSA collective action, Plaintiffs also brought Rule 23 class actions under Ohio Revised Code § 4111.03 and North Carolina General Statutes §§ 95-25.4 and 95-25.6 for failure to pay wages due.

Case Farms filed a motion to dismiss on December 9, 2008, alleging that Plaintiffs could not seek relief under the North Carolina statutes or bring a Rule 23 class action under the state laws in the same action as a FLSA collective action. (Doc. Nos. 37, 38.) As the parties have fully briefed the issue, Case Farms's motion is ripe for decision.

## II. STANDARD OF REVIEW

For purposes of a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882, 885 (6th Cir. 1990); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). The Court may then grant a motion to dismiss only if it "appear[s] beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint." *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996) (citations omitted). While "this standard [. . .] is quite liberal," *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999), conclusory allegations or legal conclusions will not suffice to survive a motion to dismiss. *Mezibov v. Allen*, 411 F.3d 712, 716

(6th Cir. 2005). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

## III. LAW AND ANALYSIS

FLSA requires an employer to pay all employees compensation at a rate of one and one-half times the regular compensation rate for all hours worked in excess of forty hours in a workweek.[1] 29 U.S.C. § 207. Any employer who violates this section is liable to the employee(s) for all unpaid wages, plus an equal amount in liquidated damages, plus reasonable attorneys' fees and costs. 29 U.S.C. § 216(b). FLSA also allows for representative actions—that is, an employee may bring an action on behalf of himself and other "similarly situated" employees—but explicitly provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Plaintiffs have brought a FLSA "collective action" on behalf of themselves and other similarly situated workers.[2]

Plaintiffs also have brought Rule 23(b)(3) class actions under North Carolina and Ohio wage and hour laws. For the reasons that follow, the Court holds that (1) Plaintiffs cannot recover overtime compensation under North Carolina law, but can recover non-overtime wages

---

[1] Plaintiffs also allege that Case Farms has failed to comply with FLSA's record-keeping requirements. (Am. Compl. ¶¶ 55-56.) Since Plaintiffs only bring overtime actions under Ohio or North Carolina law, however, this Memorandum Opinion and Order will concentrate only on the interrelation between a collective action under FLSA's overtime provisions and a Rule 23 class action under Ohio and North Carolina's respective overtime provisions.

[2] For purposes of this motion, Case Farms has not disputed that it is a covered employer, that Plaintiffs are covered employees, or that Plaintiffs are all similarly situated.

including, if warranted, through a Rule 23 class action, and (2) Plaintiffs may pursue relief under the Ohio overtime statute, but only through an opt-in action.

### A. North Carolina wage and hour law

In their opposition brief, plaintiffs argued that they are entitled to overtime compensation for donning, doffing, walking time, and waiting time under North Carolina's overtime and "payday" statutes, N.C. Gen. Stat. §§ 95-25.4, 25.6. Plaintiffs now concede that they cannot seek relief under North Carolina's overtime statute, N.C. Gen. Stat. § 95-25.4, because that statute does not apply to "[a]ny person employed in an enterprise engaged in commerce or in the production of goods in commerce as defined by the Fair Labor Standards Act." N.C. Gen. Stat. § 95-25.14(a)(1). As Plaintiffs have alleged that Case Farms is involved in commerce as defined by FLSA (Am. Compl. ¶¶ 9-10), they cannot seek relief under North Carolina's overtime statute. Indeed, Plaintiffs abandoned that claim in their opposition to Case Farms's motion to dismiss (*See* Doc. No. 61 at 2-4.), and formally conceded this point in their sur-reply. (*See* Doc. No. 67 at 2-3.)  Plaintiffs' claim under N.C. Gen. Stat. § 95-25.4 is accordingly dismissed.

Plaintiffs' claims under the North Carolina payday statute meanwhile, must be dismissed in part. North Carolina's payday statute states, in full, as follows:

> Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods shall be daily, weekly, bi-weekly, semi-monthly, or monthly. Wages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance.

N.C. Gen. Stat. § 95-25.6. "Wage," in turn, is defined as

> compensation for labor or services rendered by an employee [. . .]. For the purposes of [N.C. Gen. Stat.] 95-25.6 through [N.C. Gen. Stat.] 95-25.13 "wage" includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments.

N.C. Gen. Stat. § 95-25.2(16).

4

Case Farms suggests that the payday statute only allows recovery for wages that "the employer has a policy or a practice of making," and that since Case Farms has never paid Plaintiffs for donning, doffing, walking, and waiting, the payday statute cannot provide recovery. Case Farms misreads the statute. The limitation provision—requiring an employer policy or practice—is found at the end of a list that includes "sick pay," "bonuses," etc.; the provision does not appear in the same sentence as the phrase "compensation for labor or services." Since under the "last antecedent rule," "a limiting clause or phrase [. . .] should ordinarily be read as modifying only the noun or phrase that it immediately follows," *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003), the limitation provision should not be read to apply to the phrase "compensation for labor or services." Thus, under the plain text of the statute, an employee can bring an action to recover "compensation for labor or services rendered" regardless of whether the employer has a policy or practice of compensating for particular labor or services. The fact that Case Farms has not traditionally paid Plaintiffs for donning, doffing, walking, and waiting does not absolve it of responsibility under the payday statute.

That does not mean, however, that Plaintiffs may seek to recover under the payday statute *all* unpaid wages for donning, doffing, walking, and waiting. Courts must read statutory provisions with reference to the whole law and avoid interpretations of a statutory provision that would be incompatible with the rest of the statute. *See, e.g.*, *Dean v. Byerley*, 354 F.3d 540, 547 (6th Cir. 2004); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (citations omitted). As noted above, enterprises falling under FLSA are explicitly exempted from North Carolina's overtime statute, N.C. Gen. Stat. § 95-25.14(a)(1), and thus allowing Plaintiffs to recover unpaid overtime under the payday statute would be wholly incompatible with the exemption provision. *See, e.g.*, *Queen v. RHA Health*

*Servs., Inc.*, 2001 U.S. Dist. LEXIS 26118, at *8 (M.D.N.C. Jan. 22, 2001) ("[A]ny interpretation of § 95-25.6 that would allow [minimum wage and overtime] claims to be made thereunder would overwhelm the exemption of § 95-25.14."); *compare Barton v. The Pantry, Inc.*, 2006 WL 1367421, at *2 (M.D.N.C. May 17, 2006) (allowing a payday action to proceed coterminously with a FLSA action where payday action sought only "earned wages," whereas FLSA action sought overtime compensation). Accordingly, so as to preserve the integrity of North Carolina's wage and hour statute as a whole, the Court holds that Plaintiffs may not recover under the payday statute wages allegedly owed.

That being said, there is nothing in FLSA that logically prevents Plaintiffs from bringing a payday claim for *non-overtime* wages as a Rule 23(b)(3) class action. Several district courts have found, under incompatibility and/or preemption principles, that an opt-in FLSA action is inherently incompatible with an opt-out Rule 23 class action for state law claims substantively similar to FLSA's minimum wage and overtime provisions. *See, e.g.*, *Woodward v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 189 (M.D. Pa. 2008); *Ellis v. Edward D. Jones & Co., LP*, 527 F. Supp. 2d 439, 451 (W.D. Pa. 2007); *Evancho v. Sanofi-Aventis, U.S. Inc.*, 2007 U.S. Dist. LEXIS 93215, at *17 (D.N.J. Dec. 18, 2007); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 576-77 (N.D. Ill. 2004). Without opining on the merits of those cases, it is clear that they are inapplicable with respect to non-overtime payday claims. FLSA contains no provision analogous to North Carolina's payday statute, and thus any opt-in FLSA action is not inherently incompatible with a Rule 23 opt-out payday claim for non-overtime wages. *See Ellis*, 527 F. Supp. 2d at 451 ("Rule 23 claims that do not 'coincide with the FLSA action' may be brought together with FLSA claims in the same lawsuit [. . .]."). Moreover, nothing in North Carolina's wage and hour statute prevents Plaintiffs from recovering under the payday statute those non-

6

overtime wages they are allegedly owed. *See Whitehead v. Sparrow Enter., Inc.*, 605 S.E.2d 234, 237 (N.C. Ct. App. 2004) (exemption provision of North Carolina's wage and hour law does not exempt payday statute); *Barton*, 2006 WL 1367421, at *2 (same). Accordingly, the Court holds that Plaintiffs may bring a claim under North Carolina's payday statute for non-overtime wages they are allegedly owed.

Case Farms suggests that the case law unequivocally prohibits Plaintiffs from bringing a claim under North Carolina's payday statute to recover wages for "disputed work time." On this issue, courts are divided. One court, in two separate opinions, has held that an employee may not recover payment for "disputed work time" under the payday statute, but only for that time which the employer agreed to pay.[3] *Queen*, 2001 U.S. Dist. LEXIS 26118, at *8; *McKeithan v. Novant Health, Inc.*, 2008 U.S. Dist. LEXIS 96739, at *4, *7 (M.D.N.C. Nov. 25, 2008).[4] By contrast, another court held that no such restriction existed, and it permitted a Rule 23 class action under the North Carolina payday statute to proceed coterminously with a FLSA collective action. *Martinez-Hernandez v. Butterball, LLC*, 578 F. Supp. 2d 816, 821-22 (E.D.N.C. 2008). The Court finds the latter view to be more persuasive with respect to non-overtime wages.[5] The payday statute does not explicitly exclude recovery of "disputed work

---

[3] *Kornegay v. Aspen Asset Group, LLC*, 2006 WL 2787897, at *8-*9 (N.C. Super. Ct. Sept. 26, 2006), stated that "[a]n employee may sue under the Act to recover wages due and owing pursuant to the terms of employment," but in that case it was undisputed that defendant had not paid plaintiff a bonus that he was promised. Moreover, *Kornegay* never stated that an employee may *only* sue under the payday statute to recover wages owed under terms of employment, nor did it offer any reasoning for its rule that the wages must be owed "pursuant to the terms of employment." Accordingly, the Court hesitates to cite *Kornegay*—an unpublished decision from a North Carolina trial court—as establishing any precedent on North Carolina's payday statute.

[4] It is worth noting that *McKeithan* is factually distinguishable from this case. In *McKeithan*, the plaintiff did not even allege a claim under the payday statute, and in any event only claimed that his employer violated the minimum wage and overtime requirements of North Carolina's wage and hour laws, which are clearly exempted. 2008 WL 5083804, at *1, *2. In this case, by contrast, Plaintiffs have alleged violation of the payday statute, and they do not limit their claims solely to overtime. (*See* Am. Compl. ¶ 66 (alleging, *inter alia*, that Case Farms failed to "pay all wages accruing to such employees on each regular payday").)

[5] As noted above, allowing a payday claim for overtime wages would eviscerate the statutory framework of the North Carolina wage and hour law. Thus, the Court disagrees with *Martinez-Hernandez* insofar as it could be read to allow a payday claim for overtime wages.

7

time," and this Court is hesitant to read an unenumerated restriction into a remedial statute. *Compare Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 559 (6th Cir. 2006) ("[R]emedial statutes should be construed broadly to extend coverage and their exclusions or exceptions should be construed narrowly." (citing *Bridewell v. Cincinnati Reds*, 155, F.3d 828, 831 (6th Cir. 1998)); *City of Chicago v. Env. Def. Fund*, 511 U.S. 328, 337 (1994) (declining to read unenumerated exception into statute). Moreover, the Court agrees with the observation of Senior Judge Howard that requiring an employee to prove the existence of a contract or agreement to state a claim under the payday statute could undercut its purpose of protecting employees:

> Were the Court to interpret § 95-25.6 as requiring plaintiffs to prove that their employer expressly agreed to pay them for particular services performed [. . .], an employer would be able to avoid payment of *any* wages to his employees by simply claiming that the services rendered, although for the benefit of the employer, were something other than "work." [Such an interpretation] flies in the face of the protections afforded employees by the North Carolina Wage and Hour Act and cannot be sustained.

*Martinez-Hernandez*, 578 F. Supp. 2d at 822 (emphasis in original). Thus, the Court declines to adopt the "disputed work" exception that some courts have read into the payday statute.

For the foregoing reasons, Case Farms's motion is **GRANTED** with respect to Plaintiffs' claims under North Carolina's overtime statute, N.C. Gen. Stat. § 95-25.4; and **GRANTED IN PART** and **DENIED IN PART** with respect to Plaintiffs' claims under North Carolina's payday statute, N.C. Gen. Stat. § 95-25.6. Plaintiffs may pursue their payday claims only insofar as they claim wages for non-overtime hours worked.

### B. Ohio state law claim

Plaintiffs also attempt to bring a Rule 23 class action under Ohio Revised Code § 4111.03, which requires an employer to pay employees a wage rate of time-and-a-half for all overtime, defined as any hours worked in excess of forty hours per week. O.R.C. § 4111.03(A). Ohio's minimum wage and hour statute, O.R.C. § 4111 *et seq.*, "expressly incorporates the

8

standards and principles found in the FLSA," *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (citing Ohio Rev. Code § 4111.03(A)), and accordingly is interpreted similarly.

Plaintiffs cannot bring an opt-out class action under § 4111.03 for two reasons. First, Ohio's overtime statute allows only for an opt-in action similar to a collective action under FLSA. And second, because the overtime provisions of Ohio law and FLSA are substantively congruent, the Rules Enabling Act forbids a plaintiff from simultaneously bringing in the same suit a FLSA opt-out action and a Rule 23 action under Ohio's overtime law.

### 1. Ohio law

Ohio Revised Code § 4111.14(K) allows an employee—or a person acting on behalf of an employee or all similarly situated employees—to bring an action to enforce Ohio's wage and hour laws. That provision, however, explicitly provides:

> [n]o employee shall join as a party plaintiff in any civil action that is brought under division (K) of this section by an employee, person acting on behalf of an employee, or person acting on behalf of all similarly situated employees unless the employee first gives written consent to become such a party plaintiff and that consent is filed with the court in which the action is brought.

O.R.C. § 4111.14(K)(2). Put another way, Ohio law provides that an employee can only be joined in an Ohio wage and hour action if he affirmatively opts in to the suit; thus, eliminating the ability to bring a Rule 23(b)(3) opt-out class action.

### 2.  Rules Enabling Act

But even if Ohio law did not itself foreclose a Rule 23(b)(3) class action under Ohio's overtime statute, the *Erie* doctrine would still prohibit such an action. Rule 23 was promulgated pursuant to the Rules Enabling Act, which allows the Supreme Court "to prescribe general rules of practice and procedure [. . .] for cases in the United States district courts [. . .]." 28 U.S.C. § 2072(a). However, "[s]uch rules shall not abridge, enlarge or modify any substantive

9

right." 28 U.S.C. §§ 2072(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503 (2001) (citations omitted). "[W]here the applicability of a [rule] is in question," the rule "must be measured against the statutory requirement[s] of the Rules Enabling Act." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 27 n.5 (1988) (citing *Hanna*, 380 U.S. at 460). The issue, then, is whether Rule 23 cannot be applied to this case because doing so would abridge, enlarge, or modify a substantive right in violation of the Rules Enabling Act.

As originally enacted, FLSA allowed an employee to bring a representative action on behalf of himself and other similarly situated employees without the latter's consent. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Congress recognized, however, that such representative actions spurned a flood of FLSA litigation, and it accordingly amended FLSA in 1947 through the Portal to Portal Act, which established the current collective opt-in scheme. *Id.* (citing 93 Cong. Rec. 538, 2182 (1947) (statement of Sen. Donnell)). The Supreme Court found that Congress created the opt-in action for two reasons: "limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Id.* (citation omitted).

The Supreme Court has recognized "who may sue, on what claims, for what relief, [and] within what limitations period" as quintessentially "substantive matters." *Henderson v. United States*, 517 U.S. 654, 671 (1996) (footnotes omitted). That is precisely what the FLSA opt-in requirement does, as it limits who may sue to those who affirmatively opt in to an action and only grants relief to those who affirmatively assert their rights (and, likewise, grants relief to the employer only as against those employees who have elected to bring suit). Moreover, far from merely creating a procedure "for enforcing rights and duties [. . .] and for justly administering remedy and redress for disregard or infraction of them," *Hanna*, 380 U.S. at 464,

10

FLSA was amended in order to protect the right of an employee to not be bound in a wage and hour action without his consent, and the right of an employer to not face burdensome representative actions. *Hoffmann-La Roche*, 493 U.S. at 173 (citation omitted). The opt-in requirement is substantive because it "is the device by which those rights are secured," as it prevents employees from "hav[ing] their rights litigated without their knowledge and express consent" and generally reduces the number of plaintiffs in a representative suit against a business.[6] *Ellis*, 527 F. Supp. 2d at 456 & n.18. Indeed, were the opt-in requirement merely procedural, there would be no reason to forbid a FLSA action from being brought as a Rule 23 action, yet that is clearly impermissible under longstanding precedent. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) ("Plaintiffs wishing to sue as a class under ADEA [which has the same opt-in requirement as FLSA] must utilize the opt-in class mechanism provided in 29 U.S.C. § 216(b) instead of the opt-out class procedure provided in Fed. R. Civ. P. 23." (citation omitted)); *Anson v. Univ. of Texas Health Science Center at Houston*, 962 F.2d 539, 540 (5th Cir. 1992) (same); *Lachapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (ADEA opt-in procedure cannot be brought as a Rule 23 class action). Thus, FLSA's opt-in requirement creates substantive rights that cannot be abridged, expanded, or modified by the application of Rule 23.

It is also clear that a Rule 23 class action for an Ohio overtime claim would burden those aforesaid substantive rights. Ohio's overtime statute provides an identical remedy as FLSA—time-and-a-half for all hours worked in excess of forty hours in one workweek.

---

[6] The fact that the opt-in requirement is substantive, as opposed to procedural, also indicates that Ohio's opt-in requirement under § 4111.14(K)(2) does not exceed the Ohio legislature's power under the Ohio Constitution art. II, § 34a. That provision states that "[t]here shall be no exhaustion requirement, no procedural, pleading, or burden of proof requirements beyond those that apply generally to civil suits in order to maintain such action [. . .]." However, for the reasons discussed above, § 4111.14(K)(2), modeled explicitly off of FLSA's opt-in requirement, creates substantive rights, not new procedural requirements.

O.R.C. § 4111.03(A). Indeed, Ohio's overtime statute explicitly incorporates the overtime provisions of FLSA. *Id.* Were Plaintiffs allowed to bring Ohio overtime claims as a Rule 23(b)(3) class action, the substantive rights of both employees and Case Farms would be impermissibly abridged or modified. Those employees who have not affirmatively consented to litigating their rights would nonetheless have their rights litigated, in contravention of the purposes underlying the FLSA amendment. *Compare Ellis*, 527 F. Supp. 2d at 456-57. In fact, those employees who had not opted out of the class action would be barred under res judicata from raising any FLSA claims on their own behalves in the future, despite FLSA's clear intent to the contrary. *Id.* Additionally, the Rule 23 action would obviate Case Farms's protections against representative actions" because it would sweep most employees into the suit even though an overwhelming majority of them did not elect to opt in to the FLSA action. *Compare id.* at 456.

Therefore, because it would abridge and modify the substantive rights protected under FLSA's opt-in requirement, the Rules Enabling Act prohibits a Rule 23(b)(3) action for violation of Ohio's overtime statute from being brought in this case.[7]

## C. Jurisdiction and class certification

The Court offers a final note regarding further proceedings in light of this Order. As stated in Section III.B, *supra*, Plaintiffs may bring claims under Ohio's overtime law, O.R.C. § 4111.03, only as an opt-in action; Plaintiffs may not raise claims under Ohio's overtime law as a Rule 23 class action. The same is not necessarily true of Plaintiffs' payday claims under North Carolina law, N.C. Gen. Stat. § 95-25.6, however, because Plaintiffs may bring a payday claim

---

[7] Of course, FLSA expressly states that "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter." 29 U.S.C. § 218(a). Thus, if Ohio's statute required overtime pay for, say, all hours worked in excess of 30 hours per workweek, or if it required double-pay instead of time-and-a-half, a Rule 23 action would not violate the Rules Enabling Act. The Court finds, however, that Rule 23 cannot be applied in this case because Ohio's overtime statute is a carbon copy of FLSA's overtime provisions.

based upon non-overtime wages allegedly owed to them, and there is no inherent reason why they cannot bring such a claim as a Rule 23(b)(3) class action.

But though Plaintiffs can *logically* bring a Rule 23(b)(3) class action for non-overtime wages under North Carolina's payday statute, that does not mean that class certification is guaranteed. Indeed, the Court questions whether the threshold class action requirements of numerosity, commonality, typicality, and adequacy of representation can be met in light of this Court's Order. *See* Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The Court further questions whether Plaintiffs can satisfy the $5 million amount in controversy requirement for original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Should plaintiffs wish to continue to pursue this claim, the Court may request further briefing on the issue of whether plaintiffs' claims can be aggregated to satisfy the jurisdictional limit. The Court declines to determine these questions either way at the present time. The parties should be cognizant, however, that these questions will be revisited during the class certification stage, when they may present evidence militating in favor of or against class certification and the Court's jurisdiction under CAFA.

## IV. CONCLUSION

For the foregoing reasons, Case Farms's motion to dismiss and/or strike is:

(1) **GRANTED** with respect to Plaintiffs' claim under North Carolina's overtime statute, N.C. Gen. Stat. § 95-25.4; said claim is hereby **DISMISSED**;

(2) **GRANTED** with respect to Plaintiffs' claim under North Carolina's payday statute, N.C. Gen. Stat. § 95-25.6, insofar as it seeks recovery of overtime wages; said claim is hereby **DISMISSED**;

(3) **DENIED** with respect to Plaintiffs' claim, individually and as a class, under North Carolina's payday statute, N.C. Gen. Stat. § 95-25.6, insofar as it seeks recovery of non-overtime wages, and insofar as it seeks class certification of the same; and

(4) **GRANTED** with respect to class action allegations with respect to Plaintiffs' claim under Ohio's overtime statute, O.R.C. § 4111.03; said class action allegations are hereby **STRICKEN**, and Plaintiffs may only seek relief under Ohio's overtime statute by giving express consent in writing.

       **IT IS SO ORDERED**.

Dated: August 27, 2009

                                      **HONORABLE SARA LIOI**
                                      **UNITED STATES DISTRICT JUDGE**