UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GENTRY DILLWORTH, et al. | ) | CASE NO. 5:08-cv-1694 |
| | ) | |
| on behalf of themselves | ) | JUDGE LIOI |
| and all others similarly situated, | ) | |
| | ) | MAGISTRATE JUDGE LIMBERT |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CASE FARMS PROCESSING, INC. | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

Plaintiffs Gentry Dillworth and Anthony Smith ("Representative Plaintiffs"), and Defendant Case Farms Processing, Inc. ("Case Farms" or "Defendant"), have jointly moved the Court, pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), to approve, as fair and reasonable, a Confidential Class Action Settlement Agreement ("Settlement Agreement") between the Representative Plaintiffs, the Opt-In Plaintiffs, the proposed Ohio Class, and the proposed North Carolina Class as defined in the Settlement Agreement (collectively "Plaintiffs") and Defendant Case Farms Processing, Inc. ("Case Farms" or "Defendant").

Having conducted the Fairness Hearing on February 5, 2010, and having reviewed the Settlement Agreement, as well as the Parties' Joint Motion for Approval of Class Action Settlement Agreement ("Joint Motion"), the Declarations of Jason R. Bristol and Anthony J. Lazzaro appended thereto, and the pleadings and papers on file in this Action, and for

good cause established therein, the Court is prepared to issue its final decision approving the settlement and resolving this litigation.[1]

**Background**

On July 15, 2008, Representative Plaintiff Gentry Dillworth filed this Action as a collective action under the FLSA. On November 24, 2008, Representative Plaintiff Dillworth, along with Representative Plaintiff Anthony Smith, filed an Amended Collective Action and Class Action Complaint asserting FLSA claims on behalf of themselves and the Opt-In Plaintiffs, as well as state law claims under Ohio and North Carolina wage-and-hour laws on behalf of a putative class of employees and former employees of Defendant in those states. In the Amended Complaint, Plaintiffs allege that Defendant Case Farms failed to pay them for time spent donning and doffing their uniforms.

On October 1, 2008, the Parties entered into a Joint Stipulation to Conditional Certification and Notice which was approved by the Court, conditionally certifying this Action as a collective action on behalf of "all former and current poultry processors of Case Farms Processing, Inc., who at any time between October 22, 2005 and the present are/were employed in first and second processing, excluding positions such as leaders, shipping, receiving, box room, floor persons, quality assurance, maintenance, sanitation and other off-line positions."

In October 2008, Court-approved Notice was issued to such individuals in Spanish and English. The Notice informed them that: "If you choose to join this action, you will be bound by the judgment, whether it is favorable or unfavorable. You will also be bound by, and will share in, any settlement that may be reached on behalf of the class." The Notice further informed them that "[b]y joining this action, you designate the named Plaintiff as your agent to

---

[1] Unless otherwise defined, all terms used in this Memorandum Opinion have the same meanings as defined in the Settlement Agreement.

make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' Counsel concerning fees and costs, and all other matters pertaining to this action."

The Notice permitted individuals to opt into this Action by submitting consent forms on or before November 28, 2008. Over two hundred persons, referred to in the Settlement Agreement as the "Opt-In Plaintiffs," timely submitted consent forms.

Beginning in April 2009 and continuing into September, while discovery was underway, the Parties engaged in multiple sessions of mediation in an attempt to reach an agreement to settle the litigation, initially with Magistrate Judge Limbert acting as Mediator, and later with a private mediator. On September 4, 2009, the Parties mutually accepted a Memorandum of Agreement for the settlement of this litigation upon stated terms and conditions, now set forth in the Settlement Agreement.

The Parties' Joint Motion for approval of the settlement was filed on October 28, 2009. Both the Joint Motion and the proposed Settlement Agreement were filed under seal. The Settlement Agreement proposes to settle certain claims of the Representative Plaintiffs, the Opt-In Plaintiffs, the proposed Ohio Class, and the proposed North Carolina Class. Insofar as the Settlement Agreement proposes to settle claims of the Representative Plaintiffs and the Opt-In Plaintiffs, the proposed settlement is subject to approval by the Court pursuant to FLSA § 16(b), 29 U.S.C. § 216(b). Insofar as the Settlement Agreement proposes to settle claims of the Ohio Class and the North Carolina Class, the proposed class settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e).

The issues in this case were hotly contested, as the Court is aware from the extensive motion practice and briefing. A Settlement Agreement was achieved only after arms-

length and good faith negotiations between the Parties and their counsel, who have extensive experience litigating FLSA claims, including donning, doffing, and waiting time claims and other claims for unpaid hours worked.

On December 9, 2009, the Court granted the Parties' Joint Motion for preliminary approval of the Settlement Agreement and provisional certification of the Ohio and North Carolina Classes, approved the distribution of notices to class members in revised form, scheduled the Fairness Hearing, and established the deadline for submission of written objections

The Parties have filed with the Court the Declaration of Brendan McInerney, Project Manager for the Settlement Administrator, Rust Consulting, Inc. verifying that the Ohio Class Notice and the North Carolina Class Notice were distributed to the members of those classes in the form and manner approved by the Court. The Notice informed the class members of their rights, and provided instructions for filing objections to the proposed settlement. None of the class members filed objections to the settlement.

The Court finds that the members of the Ohio Class and the North Carolina Class were given notice of the pendency of this Action, the proposed settlement, and the date of the Fairness Hearing as ordered by the Court. The Court further finds that the notice was reasonable and the best notice practicable, and satisfied all of the requirements of Civ. R. 23 and due process.

The Court conducted a Fairness Hearing on February 5, 2010. Though they were given notice of the hearing and an opportunity to appear, none of the class members attended the Fairness Hearing.

**Final Approval of the Classes**

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure.

Rule 23(a) states:

> One or more members of a class may sue as representatives on behalf of all only
> if (1) the class is so numerous that joinder is impracticable; (2) there are questions
> of law and fact common to the class; (3) the claims or defenses of the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If all the requirements are satisfied, the case may be maintained as a class

action if the plaintiffs also satisfy one of the three provisions of Rule 23(b).

The Court must undertake a "rigorous analysis" of each factor, *Gen. Tel. Co. of

the Sw. v. Falcon*, 457 U.S. 147, 161 (1982), and the burden is on the plaintiff to establish each

element. *Amchen Prods. Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The Court has broad

discretion in certifying class actions, but must exercise its discretion within the framework of

Rule 23. *Eddleman v. Jefferson County, Ky.*, 96 F.3d 1448, at *3 (6th Cir. 1996) (table); *In re

Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citations omitted). When some doubt arises

addressing the Rule 23 factors, the district court may not inquire into the merits of the class

representatives' underlying claims, *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 551 (S.D.

Ohio 19991) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)), but instead must

accept as true the factual allegations in the complaint. *Id.* at 552.

As to the Ohio Class and the North Carolina Class, the Court finds that the

proposed settlement satisfies the standard for final approval of a class action settlement under

Fed. R. Civ. P. 23(e). The proposed settlement classes satisfy Rule 23(a)'s requirements of

commonality, numerosity, typicality, and adequacy of representation, as well as Rule 23(b)'s

requirements of predominance and superiority.

In particular, the Court finds that the Ohio class, estimated at approximately 1,000 members, and the North Carolina Class, estimated at approximately 2,000 members, are sufficiently large such that joinder of all class members from either class would be impracticable. *See Chesner v. Stewart Title Guar. Co.*, 2008 U.S. Dist. LEXIS 19303, at *16 (N.D. Ohio Jan. 23, 2008).

The Court also finds that there are common issues of law and fact that predominate. All class members seek resolution of the common legal question of whether they are entitled to pay for time donning and doffing under federal and state law. Because resolution of this common issue will affect the class as a whole, *see Bert v. Ak Steel Corp.*, 2006 U.S. Dist. LEXIS 22904, at *16 (S.D. Ohio Apr. 24, 2006) (citing *Falick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998)), these common questions, necessitating a detailed factual inquiry and legal analysis, can be resolved most efficiently in the context of a class action.

As for the requirement of typicality, the interests of the representatives arise from the same events and course of conduct that gives rise to the claims of the other class members. *See In re American Medical Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Plaintiff Dillworth, who worked for Defendant in Ohio, and Plaintiff Smith, who worked for Defendant in North Carolina, share in the interests of their respective classes in recovering payment for disputed donning, doffing, and waiting time during overtime and non-overtime hours. The fact that an individualized review of each claim brought by the members will have to be made to determine the amount of recovery does not destroy typicality. *See id.* at 1080.

"Adequate representation is essential to a class action because without it there can be no preclusive effect of the judgment." *Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414, 419 (S.D. Ohio 2002). To assess the adequacy of the representation, the Court must consider whether the

class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two prongs to this inquiry: "(1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976).

Both prongs are met. Here, class representatives share with the putative class members the desire to recover payment for the disputed time at issue. Further, class counsel is adequate. Plaintiffs' Counsel has considerable experience litigating wage and hour class lawsuits, and has demonstrated a willingness to purse the claims of the members of the putative classes.

In addition, the Court finds that Rule 23(b)'s requirements of predominance and superiority are met. The predominance inquiry tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc.*, 521 U.S. at 623. This requirement is satisfied where the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton County Public Defender Comm.*, 501 F.3d 592, 619 (6th Cir. 2007). The disputed donning, doffing, and waiting times presented under the FLSA and the OMFWSA, in the case of the Ohio Class, and the North Carolina Payday Statute, in the case of the North Carolina class, predominate over any individual questions.

The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class

action. Fed. R. Civ. P. 23(b)(3). Given the arguably limited resources of each individual class member, there is a strong interest in prosecuting the claims in one particular forum. In addition, the Court is not aware of any other actions that have been brought by individuals of the two putative classes. The Court finds that Plaintiffs have successfully demonstrated that a class action is superior to individual suits.

**Approval of the Settlement**

The FLSA was enacted for the purpose of protecting all covered workers from the inequities in the workplace that result from the differences in bargaining power between employers and employees. *See Barrentine v. Arkansas-Best Freight System*, *Inc.*, 450 U.S. 728, 739 (1981). The goal of the FLSA was to ensure that each employee covered by the Act received "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Id.* at 739 (internal citation and quotations omitted). The FLSA, therefore, provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee […] affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be […]." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945). The two circumstances in which the FLSA may be compromised are claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(b), and when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).

The latter exception applies to the instant case. The Court's role in this situation is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P.

- 8 -

23. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008). "In essence, the Court must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Id.* (citing 29 U.S.C. §§ 206, 207.) The existence of a question as to the plaintiffs' entitlement to compensation under the FLSA serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. Thus, to ensure that the plaintiffs have not abandoned their rights under the Act, "the court must determine whether such a question, or bona fide dispute, exists." *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4723399, at *3 (E.D. Ky. Oct. 23, 2008).

The Settlement Agreement resolves a bona fide dispute under the FLSA and contains terms that seek to avoid further actions under the FLSA, the Ohio Minimum Fair Wage Standards Act, or the North Carolina Wage and Hour Act. Both sides aggressively defended their positions during the summary judgment stage, and took positions that clearly demonstrated that the legal and factual issues presented in this action did not necessarily favor either side. The Court is satisfied that there is a "bona fide dispute" that justifies settlement of Plaintiffs' claims.

In evaluating the fairness and reasonableness of the Settlement Agreement, itself, the Court considers the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of Plaintiffs' success on the merits, the opinion of class counsel and class representatives, the reaction of absent class members, and the public interest in settlement. Each of these factors favors settlement.

The settlement was only reached after the parties engaged in arms-length negotiation, following extensive investigation and discovery. Both Plaintiffs' Counsel and the

Representative Plaintiffs have indicated that they believe that the settlement is fair, reasonable, and adequate and in the best interests of Plaintiffs. Moreover, it is likely that, in the absence of a resolution, this litigation will continue on for some time.

Additionally, given the factual and legal complexity of the case, there is no guarantee that Plaintiffs would prevail at trial. In contrast, the Settlement Agreement assures that Plaintiffs will receive substantial compensation for time spent in the disputed activities. Given the uncertainty surrounding a possible trial in this matter, the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement. Likewise, such a ruling promotes the public's interest in encouraging settlement of litigation. *See Crawford*, 2008 WL 4724499, at *9.

The Court has considered all of the relevant factors individually and collectively in evaluating the proposed settlement. The balance of factors weights in favor of a finding that the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute.

It is also a court's responsibility to ensure that the distribution of the settlement proceeds is equitable. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999). Equity does not dictate, however, that the distribution be on a pro-rata basis. *See UAW v. GMC*, 497 F.3d 615, 628 (6th Cir. 2007) (citing *Ortiz*, 527 U.S. at 119) ("Neither the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a pro rata distribution to class members; instead the settlement need only be 'fair, reasonable, and adequate.'")

The Court approves the method of calculation and proposed distribution of settlement payments as fair and equitable. The total Settlement Payment, after deduction of the Service Awards to the Representative Plaintiffs and attorneys' fees and expense reimbursements to Plaintiffs' Counsel, is to be distributed to the Representative Plaintiffs and the Opt-In

- 10 -

Plaintiffs, and to the members of the Ohio Class and the North Carolina Class, in Individual Payments, which are to be calculated on a proportional basis based on the individuals' relevant workweeks and shifts during the Calculation Period, according to payroll information maintained by Defendant and provided to Plaintiffs' Counsel, and according to the further specifications set forth in the Settlement Agreement. The Parties have submitted the proposed Schedule of Individual Payments to the Court for approval. The Court approves the Schedule of Individual Payments and orders that such payments be distributed in the manner, and upon the terms and conditions, set forth in the Settlement Agreement.

**Service Awards**

The Settlement Agreement also provides for a service award of $6,000.00 to be paid to Plaintiff Representative Dillworth and an award of $4,000.00 to be paid to Plaintiff Representative Smith. Such awards are not uncommon, and "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). Representative Plaintiff Dillworth provided extensive factual information to Plaintiffs' Counsel, and attended conferences, court events, and mediation sessions. While Plaintiff Representative Smith devoted less time to the present litigation, he also played a significant role in assisting class counsel. The Court approves the Service Awards to the Representative Plaintiffs in recognition of their service in this Action, and orders that such payment be made in the manner, and upon the terms and conditions, set forth in the Settlement Agreement.

**Attorneys' Fees**

The Settlement Agreement proposes an award to Plaintiffs' Counsel of attorneys' fees for one-third of the total Settlement Payment. An attorneys' fee award must be reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Reed,* 179 F.3d at 471 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). District courts within the Sixth Circuit have the discretion to select one of two methods for calculating an award of attorneys' fees in a common fund case by using either a percentage of the fund calculation or a lodestar multiplier. *Rawlings v. Prudential-Bache Properties, Inc*., 9 F.3d 513, 516-17 (6th Cir. 1993); *Bailey*, 2008 U.S. Dist. LEXIS 18838, at *4-*5. Regardless of how the award is calculated, the final amount must be reasonable. *Smillie v. Park Chem. Co*., 710 F.2d 271, 275 (6th Cir. 1983); *Rawlings*, 9 F.3d at 516.

The district court must "provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee." *Rawlings*, 9 F.3d at 516. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have accumulated.

In light of the exceptional result obtained, and the accomplishment of reaching a resolution before additional resources were expended, the Court finds the percentage of the fund analysis appropriate. In determining what constitutes a reasonable and fair percentage of the fund, the Sixth Circuit teaches that the following factors are to be considered: (1) the value of the benefit to the class; (2) society's interest in rewarding attorneys who achieve such benefits; (3)

whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the skill of the litigators on both sides.

There can be no doubt that the results achieved for the class members are exceptional. The Individual Payments to participants represent approximately one-third of claimed unpaid wages, before deduction of attorneys' fees and expenses. Such an allocation is well above the 7 % to 11 % average result achieved for class members. *See* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: *What Explains Settlements in Shareholder Class Actions*? (National Economic Research Assocs. (NERA) June 1995).

In small cases (such as the one presently before the Court) where the risk of "excessive" or "windfall" fees is not great, counsel may rely upon summaries to demonstrate the time and effort that went into litigating the lawsuit. Manual for Complex Litigation (4th) § 14.121. The Court has reviewed the declarations of Attorneys Bristol and Lazzaro, as well as Plaintiffs' Counsel's Summary of Case Activities (*See* Doc. No. 87), and is satisfied that counsel expended considerable time and effort in litigating this lawsuit and representing the rights of the various class members. In reaching this conclusion, the Court underscores the fact that the proposed one-third fee is part of counsel's contingent fee agreement with Plaintiff Representative Dillworth and all of the Opt-in Plaintiffs were informed of it before they joined the case. The Court also notes that counsel had the heightened difficulty of navigating a lawsuit that contained elements of a FLSA collective action and a Rule 23 class action on state law claims.

The contingent nature of the fee agreement also meant that counsel bore the risk of receiving no fee in the event that a less than favorable result was achieved. The amount of the

contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions in this judicial district. *See, e.g., Jackson v. Papa John's*, Case No. 1:08CV2791 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co.*, 1:08CV73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.*, Case No. 1:07CV1110 (N.D. Ohio 2007).

Having considered all of the circumstances surrounding the attorneys' fees award, the Court finds that it is fair and reasonable. The Court, therefore, approves the payment of attorneys' fees as provided in the Settlement Agreement and the reimbursement of expenses to Plaintiffs' Counsel in the amount set forth in their Supplemental Submission of Litigation Expenses, and orders that such payments be made in the manner, and upon the terms and conditions, set forth in the Settlement Agreement.

The Representative Plaintiffs, the Opt-In Plaintiffs, and the members of the Ohio Class and the North Carolina Class release claims against Case Farms as provided in the Settlement Agreement. The Representative Plaintiffs also release claims as provided in the separate Settlement and Release Agreement entered into between the Representative Plaintiffs and Case Farms.

**Plaintiffs' Motion for Reconsideration**

Also pending before the Court is Plaintiffs' Motion for Reconsideration of the Court's holding that Ohio's Overtime Statute Permits Only an Opt-In Collective Action, filed September 10, 2009, which asks the Court to reconsider one aspect of its August 27, 2009 Memorandum Opinion and Order on the ground that the issue was not raised or briefed by the Parties, among other grounds. Plaintiffs have requested that the Court rule on that motion notwithstanding the proposed settlement. Defendant has not opposed the motion, and the Court is informed that Defendant does not object to the Court ruling on it. The Court grants the requested

- 14 -

reconsideration of its August 27, 2009 Memorandum Opinion and Order and vacates only that portion of the Order stating that "Ohio's overtime statute allows only for an opt-in action similar to a collective action under [the] FLSA." This accommodation by the Court is not in any way meant to suggest how the Court would rule on this issue in the future, and the accommodation should not be used by any litigant in any future proceeding.

**Conclusion**

For all of the foregoing reasons, the Joint Motion for Approval of the Settlement Agreement (Doc. No. 77) is **GRANTED**. The Settlement Agreement is hereby **APPROVED** as it is a fair and reasonable resolution of a bona fide dispute under federal and state law. The Parties are to bear their respective attorneys' fees and costs except as provided in the Settlement Agreement. The Court retains jurisdiction over this Action for the purpose of enforcing the Settlement. This case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Dated: March 8, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**